## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES C. JENNINGS, Jr., #Y14477,    )
   )
              **Plaintiff,**    )
   )
vs.    )    **Case No. 17-cv-01220-MJR**
   )
MR. GARNER,    )
SHERRY BENTON,    )
and MS. COLLINS,    )
   )
              **Defendants.**    )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff James Jennings, Jr., an inmate who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights at Menard Correctional Center ("Menard"). (Doc. 1). Plaintiff claims that he was attacked by another inmate on July 26, 2017, after being denied protective custody by Mr. Garner (internal affairs officer), Ms. Collins (head counselor), and Sherry Benton (administrative review board chairperson). (Doc. 1, pp. 8-11, 19-24, 31-34, 36-39). He was issued a disciplinary ticket for fighting and held for six days in disciplinary segregation before the ticket was dismissed. (Doc. 1, pp. 8-11, 25-30, 41-46). Plaintiff now seeks monetary damages against the defendants. (Doc. 1, p. 12, 35, 40).

This matter is before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

*Id*. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

## The Complaint

Plaintiff was attacked by another inmate after being denied protective custody at Menard in June and July 2017. (Doc. 1, pp. 8, 10-11, 31-34, 36-39). He was released from segregation into Menard's East Cell House on or around June 17, 2017. (Doc. 1, p. 8). Two days later, several well-known "moes"[1] approached Plaintiff and told him to check into protective custody for his own safety. *Id*. One of these inmates, known as "Scooter," approached Plaintiff in the prison yard and threatened to "stab [him] up" if he did not do so. *Id*.

Plaintiff allegedly owed several inmates money at the time. (Doc. 1, p. 8). He apparently intended to repay them with items he purchased from the prison commissary. *Id*. However,

---

[1] Plaintiff does not define this term, but uses it throughout the Complaint. The exhibits suggest that this term is used to refer to other inmates who have gang affiliations.

Plaintiff was subject to commissary restrictions because of his B-grade status. *Id*. Consequently, he was only allowed to spend $30.00 at the commissary. *Id*.

Plaintiff approached a lieutenant and asked him for permission to spend the entire $100.00 balance in his account. (Doc. 1, p. 8). Plaintiff failed to mention that he owed anyone money. *Id*. The lieutenant suspected this and, after denying Plaintiff's request, asked another inmate named "U-Mac" if Plaintiff "owed everybody." *Id*. When U-Mac told Plaintiff about the lieutenant's inquiry, Plaintiff denied any outstanding financial obligations to other inmates. *Id*.

Plaintiff nevertheless requested protective custody, and his request was temporarily granted. (Doc. 1, p. 8). After reporting the inmate threats to Counselor Collins and requesting continued protective placement, she denied the request. *Id*. Internal Affairs Officer Garner did the same. (Doc. 1, p. 10).

On July 20, 2017, Plaintiff spoke with Chairperson Benton about the matter. (Doc. 1, p. 10). In addition to reporting the recent threats made by Scooter and other inmates, Plaintiff allegedly told Benton that Internal Affairs Officer "Gee" previously informed Plaintiff that he should not be housed on "the hill" at Menard and would be transferred. (Doc. 1, pp. 10, 19-24). Benton agreed to look into the matter. (Doc. 1, p. 10). While she did so, Plaintiff remained in protective custody. *Id*. On July 25, 2017, Plaintiff received paperwork from Benton that denied his request for protective custody and resulted in his transfer to Menard's West Cell House. *Id*.

Plaintiff claims that "everybody from the East House" also transferred to the West Cell House around the same time. (Doc. 1, p. 10). When Plaintiff went to the prison yard, Scooter approached Plaintiff and told him that he was not supposed to be "on loca." *Id*. He was attacked the following day. *Id*.

3

As Plaintiff returned from the gym to the West Cell House on July 26, 2017, Inmate Elliot stepped out of line and struck Plaintiff in the right ear. (Doc. 1, p. 10). The blow to his head caused Plaintiff to feel dizzy and lightheaded. *Id*. He fell to the ground. *Id*. Inmate Elliot then climbed on top of Plaintiff and began hitting him in the face. *Id*. When Plaintiff shielded his face with his hands, Inmate Elliot hit Plaintiff in his left ear and caused serious bleeding. (Doc. 1, p. 11).

Following the incident, Plaintiff was issued a disciplinary ticket for fighting and taken to segregation. (Doc. 1, pp. 11, 25-27). He spoke with Internal Affairs Officer Gee about the ticket, and Gee assured Plaintiff that he would speak directly to the lieutenant in charge of his disciplinary hearing. *Id*. In the meantime, Plaintiff remained in segregation, where he wrote the lieutenant a kite challenging the ticket and his punishment with segregation. *Id*. The lieutenant ultimately dismissed the ticket on August 1, 2017. *Id*. On the same date, Plaintiff transferred from segregation into protective custody, where he remained until transferring to Shawnee Correctional Center. *Id*.

In the statement of his claim, Plaintiff does not complain about the denial of medical care for the injuries he sustained on July 26, 2017. (Doc. 1, p. 11). However, his exhibits point to a possible delay or denial of medical care. (Doc. 1, pp. 8-11, 19-24, 31-34, 36-39). Plaintiff was allegedly treated in the prison health care unit by a nurse on August 6, 2017. *Id*. He objects to the $5.00 co-pay he was charged for these services. *Id*.

Plaintiff now seeks monetary damages against the defendants for their "negligence" in denying him protective custody and for his placement in disciplinary segregation on false disciplinary charges for six days. (Doc. 1, pp. 12, 35, 40).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint into the following counts:

> **Count 1 -** Defendants failed to protect Plaintiff from a known risk of harm from Scooter, Elliot, and other "moes" at Menard, in violation of the Eighth Amendment, when they denied his requests for protective custody in June and July 2017.

> **Count 2 -** Defendants deprived Plaintiff of liberty without due process of law, in violation of the Fourteenth Amendment, when placing him in segregation for six days following his attack by Inmate Elliot and pending a hearing on the disciplinary ticket he received for fighting.

> **Count 3 -** Plaintiff received inadequate medical care for the injuries he sustained during the attack by Inmate Elliot on July 26, 2017, in violation of the Eighth Amendment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding their merit. **Any claim not identified above but encompassed by the allegations in the Complaint shall be considered dismissed without prejudice from this action.**

## Claim Subject to Further Review

### Count 1

The Supreme Court has long held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the

officers who are responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order to state a failure to protect claim, a plaintiff must allege that (1) he was incarcerated under conditions posing a substantial risk of serious harm (*i.e.*, an objective standard), and (2) the defendant acted with deliberate indifference to that risk (*i.e.*, a subjective standard). *Id*.; *Pinkston*, 440 F.3d at 889. The Complaint satisfies both components of this claim for screening purposes.

With regard to the objective component, the Seventh Circuit has held that a generalized risk of violence does not support an Eighth Amendment claim. *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Plaintiff must allege a "tangible threat to his safety or well-being." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). For screening purposes, Plaintiff describes a sufficiently serious threat to his safety when referring to the warnings he received from other inmates and the threat he received from Scooter just days before the attack by Inmate Elliot. (Doc. 1, pp. 8-11).

The subjective component of this claim is satisfied where allegations suggest that the defendant knew that an attack was "almost certain to materialize if nothing [wa]s done" and took no action despite being in a position to do so. *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). Although Plaintiff characterizes the defendants' conduct as negligence, the allegations suggest that it rose to the level of deliberate indifference. *See Norfleet v. Walker*, 684 F.3d 688 (7th Cir. 2012) (courts must analyze a *pro se* litigant's potential claims and not just the legal theories he propounds). A liberal construction of the Complaint supports an Eighth Amendment claim against all three defendants because each denied Plaintiff's request for continued protective placement after learning of the specific threats he received in June and July 2017. (Doc. 1, pp. 8-11). Plaintiff was attacked the day after he was released back into the general population. *Id*. Count 1 therefore survives screening against Defendants Garner, Benton, and Collins.

## Claims Subject to Dismissal

## Count 2

Plaintiff complains that he was unfairly detained in disciplinary segregation for six days, pending a hearing on the ticket he received for fighting. (Doc. 1, pp. 8-11). To trigger due process protections under the Fourteenth Amendment, he must possess a protected liberty interest. *Meachum v. Fano*, 427 U.S 215, 223-24 (1976). A transfer into disciplinary segregation for an "extended period under particularly harsh conditions may constitute a deprivation of liberty sufficient to require constitutionally minimal process." *James v. Pfister*, -- F. App'x --, 2017 WL 3880880 (7th Cir. Sept. 1, 2017) (citing *Kervin v. Barnes*, 787 F.3d 833, 835-37 (7th Cir. 2015); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest arises only when Plaintiff's confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts consider two factors when making this determination: "the combined import of the duration of the segregative [sic] confinement *and* the conditions endured." *Id*. at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original). In other words, a liberty interest may arise if the length of confinement in segregation is substantial and the record reveals that the conditions of confinement were unusually harsh. *Marion*, 559 F.3d at 697-98, n. 2.

This claim presents several problems. First, Plaintiff was only held in segregation for six days, a short duration under most standards. Unless the conditions were particularly harsh, Plaintiff's confinement in disciplinary segregation would not give rise to a protected liberty interest. Second, Plaintiff fails to describe the conditions he faced in disciplinary segregation.

Therefore, the Court is unable to assess whether the conditions were sufficiently harsh to trigger a liberty interest or due process protections. Third, Plaintiff identifies no due process violations in connection with the disciplinary ticket. Safeguards typically include: (1) advance written notice of the charges against the plaintiff; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In fact, Plaintiff appears to have received the process he was due. Following a hearing, Plaintiff's ticket was dismissed, and he was released from disciplinary segregation. Finally, he names no defendants in connection with this claim. Count 2 does not survive screening for each of these reasons and shall be dismissed without prejudice for failure to state a claim.

## Count 3

The Complaint articulates no colorable Eighth Amendment claim against the defendants for the denial or delay of adequate medical care following Plaintiff's attack on July 26, 2017. Plaintiff's only complaint regarding medical treatment in the statement of claim pertains to the $5.00 co-payment he was charged for services on August 6, 2017. (Doc. 1, p. 11). This gives rise to no constitutional claim. An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law and is not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution").

In several grievances that he included as exhibits to the Complaint, Plaintiff complained of a delay in treating his ear injury. (Doc. 1, pp. 20, 22, 24, 42, 44, 46). A delay in treating a serious medical condition can rise to the level of deliberate indifference and support an Eighth Amendment claim. *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). However, Plaintiff does not mention any delayed treatment in the statement of his claim. (Doc. 1, pp. 8-11). He also names no individual – let alone a defendant – in connection with a medical claim. *Id*. Where a plaintiff has not identified a defendant in reference to a claim, the defendant cannot be said to be adequately put on notice of which claims, if any, are directed against him. *Twombly*, 550 U.S. at 555. Liability under § 1983 hinges on personal involvement in or responsibility for the deprivation of a constitutional right. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). A state official may be held liable, if he "caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Therefore, to state a claim against an individual defendant for the denial of medical care, Plaintiff must associate specific defendants with the misconduct that resulted in his denial of adequate treatment. Having failed to do so, Plaintiff cannot proceed with his claim for money damages in Count 3 against the defendants, and this claim shall be dismissed without prejudice.

### Claims Against Non-Parties

In the statement of his claim, Plaintiff mentions several individuals who are not named as defendants in this action. These individuals include Internal Affairs Officer Gee, two lieutenants, and a nurse, among others. (Doc. 1, pp. 8-11). When parties are not listed in the

caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). Accordingly, any claims against these individuals shall be considered dismissed without prejudice from this action.

## Pending Motions

**1.      IFP Motion (Doc. 2)**

Plaintiff filed a motion for leave to proceed *in forma pauperis*, and the motion shall be addressed in a separate court order.

**2.      Motion for Recruitment of Counsel (Doc. 3)**

Plaintiff filed a motion for recruitment of counsel, which shall be referred to a United States Magistrate Judge for a decision.

**3.      Exhibit (Doc. 6)**

Finally, Plaintiff filed a set of exhibits, which the Court reviewed but did not construe as part of the Complaint. The Court does not accept piecemeal amendments to the Complaint. Further, the exhibits did not impact the screening of this matter. The first four pages consist of payment authorizations for photocopies, which are irrelevant to the claims at issue in this case. (Doc. 6, pp. 1-4). The final two pages consist of a request for relief that is already included in the Complaint. (Doc. 1, p. 12; Doc. 6, pp. 5-6). The exhibits shall remain on file for Plaintiff's use, but are not incorporated into the original Complaint.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 2** and **3** are **DISMISSED** without prejudice

against all of the defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 1** survives preliminary review and shall proceed against Defendants **GARNER, BENTON**, and **COLLINS**.

With regard to **COUNT 1**, the Clerk shall prepare for Defendants **GARNER, BENTON, and COLLINS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on the motion for recruitment of counsel (Doc. 3), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if*

11

*all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

       **IT IS SO ORDERED.**

       **DATED: December 5, 2017**

                                    s/ MICHAEL J. REAGAN
                                    United States Chief District Judge